IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DIAMONDBACK TIMBERLANDS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:06-CV-19 (CAR) |
| | : | |
| NELLIE S. MORRISON, | : | |
| | : | |
| Defendant. | : | |

## ORDER ON PLAINTIFF'S MOTION TO AMEND, DEFENDANT'S MOTION TO DISMISS

**I.  INTRODUCTION**

On January 17, 2006, Plaintiff Diamondback Timberlands, Inc. ("Diamondback") initiated the instant declaratory-judgment action, seeking, among other things, a declaration from this Court that the contract Diamondback entered into with Defendant Nellie S. Morrison ("Morrison") on September 10, 2005, is null and void.  Before the Court are: (1) Diamondback's Motion to Amend (doc. 25); and (2) Morrison's Motion to Dismiss (doc. 22) the instant action.  For the reasons stated below, Morrison's Motion to Dismiss (doc. 22) is **GRANTED**, and Diamondback's Motion to Amend (doc. 25) is **DENIED AS MOOT**.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2005, Diamondback and Morrison executed a Contract for Purchase and Sale ("Contract") of approximately 2,400 acres of land situated in Talbot and Marion Counties, Georgia. The relevant portions of the Contract are set forth below:

> 2. PURCHASE PRICE. The Purchaser agrees to pay and the Sellers agree to accept is [sic]: One Thousand Five Hundred Sixteen Dollars ($1,516) per acre as payment for the property.
>
> A BINDER DEPOSIT of Seventy Five Thousand Dollars ($75,000) is paid to Dock H. Davis Trust Account for the Benefit of Nellie S. Morrison and shall be deposited upon the acceptance of this offer and apply towards the purchase price at closing.
>
> 4. WARRANTIES OF TITLE. Sellers warrant that they presently have good and marketable title said to [sic] property and that they shall convey same to Purchaser by General Warranty Deed subject only to zoning ordinances affecting said property, and general utility easements of record affecting said property.
>
> 5. OBJECTIONS TO TITLE. Purchaser shall have <u>Fifteen (15) days</u> after Sellers' acceptance of this contract to examine Sellers' title and to deliver to Sellers a written statement of objections, if any, affecting the validity of Sellers' title. Sellers shall have Fifteen (15) days after receipt of such objections to satisfy all valid objections, and in the event Sellers fail to satisfy said valid objections prior to Closing, then [at] the option of the Purchaser, (a) Purchaser may extend for <u>Thirty (30) days</u> time for curing said defects, (b) Purchaser may declare this contract null and void and shall be entitled to immediate refund of the earnest money paid hereunder.

(Contract, Ex. A to Compl., doc. 1.) Pursuant to paragraph two of the Contract, Diamondback paid $75,000.00 to Morrison's attorney, Dock Davis ("Davis"), and Davis

deposited the earnest money into his client trust account. During the title examination, Diamondback discovered a defect in Morrison's title: a private easement across the property held by an adjacent landowner. Diamondback notified Morrison of the alleged title defect, and after Morrison failed to cure the defect within the contractually designated time period, Diamondback notified Morrison of its intent to declare the contract null and void and demanded the return of its earnest money. When Davis refused to return the earnest money, Diamondback filed the instant action, seeking a declaratory judgment from this Court that the contract entered into by the parties "became null and void due to the defendant's failure to cure the [plaintiff's] objections to the title," as well as the return of "its earnest money deposit of $75,000.00." (Compl. ¶¶ 18-22.) Approximately one year from the date on which Diamondback filed its Complaint, Morrison moved to dismiss the action. (Def.'s Mot. Dismiss, doc. 21.) Shortly thereafter, Diamondback moved to amend its Complaint. (Pl.'s Mot. Am., doc. 24.) The Court will address Morrison's Motion to Dismiss first.

### III. LEGAL DISCUSSION

#### A. Morrison's Motion to Dismiss

Morrison's Motion to Dismiss presents two main issues for determination. The first issue is whether this case should be dismissed because Diamondback failed to join Davis, an individual whom Morrison claims is an indispensable party, and one whose presence

would destroy diversity jurisdiction. The second issue is whether Diamondback has met the amount-in-controversy requirement for diversity jurisdiction. The Court now turns to Morrison's first argument in favor of dismissal.

Morrison contends that the instant action should be dismissed because Diamondback "failed to join Dock Davis, a party indispensable to the resolution of this matter." (Def.'s Br. Supp. Mot. Dismiss, doc. 22, at 3.) If Morrison is correct on this point, the Court must dismiss the instant action because Davis's shared state citizenship with Diamondback forecloses his joinder as a party.

The instant case is premised on diversity jurisdiction. The requirements for diversity jurisdiction are set forth in 28 U.S.C.A. § 1332(a)(1), which provides: "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. . . ." 28 U.S.C.A. § 1332(a)(1). Generally, a suit is deemed to be "between citizens of different states" if no plaintiff shares the same state citizenship with *any* defendant. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 367 (1806) (emphasis added). "As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure." *Doctor's Assoc.'s, Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995). "Where joinder of a party would

4

destroy subject matter jurisdiction, the court must dismiss the action if that party is indispensable to the litigation." *Id.* (citations omitted).

Here, Diamondback is a Georgia corporation with its principal place of business in Bibb County, Georgia. Morrison is a citizen and resident of Maryland. Notwithstanding the fact that Diamondback and Morrison do not share the same state citizenship, Morrison argues that there is not complete diversity of citizenship in this case. According to Morrison, the controversy surrounding the contract and earnest money at issue involves not only Diamondback, but also Davis because the earnest money is in his client trust account. Because both Davis and Diamondback are citizens of Georgia, Davis cannot be joined to the instant action without destroying diversity jurisdiction. Thus, the salient issue before the Court is whether Davis is an indispensable party.

Federal Rule of Civil Procedure ("FRCP") 12(b)(7) allows a district court to dismiss an action for failure to join an indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7), 19. Determining whether a party is indispensable to an action under Rule 19 involves a two-step inquiry. The first step requires a court to determine whether the person in question fits the definition of those who should "be joined if feasible" under Rule 19(a). *See* **Provident Tradesmens Bank v. Patterson**, 390 U.S. 102, 118 (1968). According to Rule 19(a), a person should be joined, when feasible,

> if (1) in the person's absence complete relief cannot be accorded among those

already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). If a person is one who should be joined if feasible under Rule 19(a), but he cannot be joined because, for example, his presence would destroy diversity jurisdiction, the Court must then "inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Challenge Homes, Inc. v. Greater Naples Care Ctr.*, 669 F.2d 667, 668 (11th Cir. 1982).

Here, the Court's must first determine whether complete relief can be accorded in Davis's absence. "In making this decision, pragmatic concerns, especially the effect on the parties and the litigation, control." *Id.* at 669 (internal citations and quotation marks omitted). In this case, pragmatic concerns, in conjunction with a careful examination of the factors outlined in Rule 19(a), lead this Court to conclude that Davis is a party who should be joined if feasible.

The Court's determination of whether complete relief can be accorded in Davis's absence hinges on the resolution of a critical issue: whether Davis acted as an escrow agent or trustee during the transaction in question. The relevant portion of the contract provides: "A BINDER DEPOSIT of Seventy Five Thousand Dollars ($75,000) is paid to Dock H.

Davis <u>Trust</u> Account for the Benefit of Nellie S. Morrison and shall be deposited upon the acceptance of this offer and apply towards the purchase price at closing." (Contract, Ex. A to Compl., ¶ 2.) (emphasis added). Under the terms of the contract, Davis was required to apply the earnest money toward the purchase price at closing, or to return the money to Diamondback if there was an incurable title defect. (***Id.*** at ¶ 5.) Morrison argues that Davis's control over the trust account into which he deposited Diamondback's earnest money created a de facto escrow agency relationship between Davis and the parties. Morrison further contends that Davis's status as a de facto escrow agent makes him indispensable to the resolution of this case. Not surprisingly, Diamondback sees Davis's role in this matter a little differently. Diamondback submits that no escrow agency relationship existed between it and Davis. In Diamondback's view, Davis's role in the transaction was more akin to that of a trustee because Davis acted solely on Morrison's behalf during the transaction by, among other things, accepting Diamondback's earnest money and depositing it into his client trust account for Morrison's benefit. (Pl.'s Br. Resp. Def.'s Mot. Dismiss, doc. 26, at 6.)

To create a valid and binding escrow in Georgia,[1] there must be:

> an actual contract between the parties at interest, a proper subject matter, and an absolute deposit of an instrument with a depositary acting for the parties,

---

[1] In this diversity action, the Court must apply the substantive law of the forum state, Georgia. ***LaFarge Corp. v. Travelers Indem. Co.***, 118 F.3d 1511, 1515 (11th Cir. 1997).

7

by which it passes beyond the control of the depositor to withdraw the deposit on the performance or happening of the agreed conditions of the escrow.

*Fulton Land Co. v. Armor Insulating Co.*, 15 S.E.2d 848, 849 (Ga. Ct. App. 1941). An escrow agent involved in a disputed real estate transaction is an indispensable party in an action to recover earnest money paid to the escrow agent. *See McGinley v. Chappas*, 85 S.E.2d 791, 792 (Ga. Ct. App. 1955). Conversely, in an action to recover money paid to a trustee, the trustee is not an indispensable party because "his only obligation is to pay over the amount deposited with [him] when it is ascertained which of the other parties is entitled to it." *Salem Trust Co. v. Mfr.'s Fin. Co.*, 264 U.S. 182, 190 (1924). Based on the applicable law and the facts presented, the Court concludes that Davis acted as the parties' escrow agent during the transaction at issue; thus, he is a party who should be joined if feasible.

Despite the fact that the parties used "trustee" language in the Contract, the substance of the transaction reveals that Davis was the parties' de facto escrow agent. There was an actual contract between Diamondback and Morrison (the parties at interest), a proper subject matter (property to be sold), and an absolute deposit of earnest money, which, under Georgia law, is equivalent to the deposit of an instrument. *See McGinley*, 85 S.E.2d at 792. Moreover, the terms of the contract required Diamondback to deposit the earnest money into the trust account, and, upon accepting Morrison's offer of sale and

8

depositing the earnest money, Diamondback could not withdraw its deposit. In fact, Diamondback could only recoup its deposit if it objected to the marketability of Morrison's title and followed the procedure outlined in paragraph five of the Contract for dissolving the contract.

In situations involving a conditional contract of purchase "where earnest money is turned over to [a third party] to be held by him during the pendency of the contingency," and, upon the happening of the contingency, "to be disposed of as set out in the contract, an escrow agency in the [third party] is created." *Id.* When a contract provides for the return of the earnest money to the purchaser if the sale is not consummated for reasons other than the purchaser's default, "the escrow agent is not authorized to turn the money over to the seller where the contract of sale is expressly contingent" upon the seller's ability to provide good title, and where the seller cannot produce a clean title. *See id.* In such cases, "the purchaser has a right to demand the money back from [the third party], and an action against the seller, who never received the money, will not lie." *Id.*

Because Davis was the parties' de facto escrow agent during the transaction at issue, Diamondback's cause of action properly lies against Davis, rather than Morrison. *Id.* It follows, then, that under the first part of the Court's Rule 19 inquiry, complete relief cannot be accorded in Davis's absence.

With respect to the second part of the indispensable-party test, the Court must

decide "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b). The factors to be considered include:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

*Id.*

Here, the Court focuses on the third and fourth factors for consideration. Based on the Court's 19(a) analysis above, Davis must be joined because Diamondback's action properly lies against him, rather than Morrison. Thus, a judgment rendered in Davis's absence would be wholly inadequate. Moreover, the dismissal of this case without prejudice would not foreclose Diamondback's ability bring an action against Davis in state court to recover the earnest money, as the applicable statute of limitations period has not yet run. *See* O.C.G.A. § 9-3-24. For these reasons, then, the Court concludes that the action cannot proceed between the current parties because Davis is indispensable to the resolution of this matter, and he cannot be joined because his presence would destroy the

Court's diversity jurisdiction.[2]

Accordingly, Morrison's Motion to Dismiss for failure to join an indispensable party is hereby **GRANTED**.

**B.      Diamondback's Motion to Amend**

In light of the Court's foregoing determination, Diamondback's Motion to Amend (doc. 25) its Complaint is **MOOT**.

**IV.     CONCLUSION**

For the foregoing reasons, Morrison's Motion to Dismiss (doc. 22) is **GRANTED**, and Diamondback's Motion to Amend (doc. 25) is **DENIED AS MOOT**.

SO ORDERED, this 12th day of June, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

JAB/ssh

---

[2] The Court's decision to dismiss the instant action for failure to join an indispensable party obviates the need for the Court to address Morrison's alternate argument regarding Diamondback's failure to satisfy the amount-in-controversy requirement for diversity jurisdiction.